IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff/Respondent, | § | |
| | § | |
| V. | § | CR. No. C-03-70 (1) |
| | § | C.A. No. C-07-342 |
| NOE NICOLAS GARZA, | § | |
| | § | |
| Defendant/Movant. | § | |

**ORDER DENYING MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE AND
ORDER DENYING CERTIFICATE OF APPEALABILITY**

Pending before the Court is Noe Nicolas Garza's ("Garza") motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, with supporting memorandum.  (D.E. 64, 65.)[1] Also before the Court is the government's response, which moves for the dismissal of Garza's motion. (D.E. 75, 76.)  By Order dated October 29, 2007, the Court granted Garza's motion to amend his § 2255 motion, and ordered the government to file a supplemental response.  (D.E. 76.) The government filed its supplemental response and motion to dismiss on November 21, 2007. (D.E. 78, 79.)  The Court has also considered Garza's initial and supplemental replies.  (D.E. 77, 80.)  For the reasons set forth below, Garza's § 2255 motion is DENIED.  Additionally, the Court DENIES Garza a Certificate of Appealability.

**I. JURISDICTION**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 2255.

---

[1] Docket entry references are to the criminal case, Cr. No. C-03-70.

## II. BACKGROUND

**A.     Facts of the Offense[2]**

On February 27, 2003, Garza was the driver and owner of a tractor trailer that entered the Falfurrias, Texas Border Patrol Checkpoint. His sole passenger was Roberto Adan Jimenez. After a canine alerted to the vehicle, agents discovered 11.07 kilograms of cocaine (net weight) hidden in the sleeper area of the tractor. Additionally, agents discovered 18.4 grams of cocaine (net weight) on Jimenez's person, wrapped similarly to the cocaine found in the vehicle. Both Garza and Jimenez denied knowledge of the cocaine, and Jimenez insisted that he was unaware that he had cocaine on his person. Jimenez reported that he was helping Garza drive to Vineland, New Jersey, to deliver Garza's load. Jimenez stated that Garza was going to pay Jimenez money out of his own pocket to help him drive. Inspection of the bill of lading revealed that the load was accepted by Jimenez.

DEA assumed custody of the case and interviewed both Garza and Jimenez. Garza advised agents that the cocaine came from an individual in Edinburg, Texas and that he, Garza, had placed the cocaine into the liner walls of the tractor. Garza also informed agents that he had called Jimenez and offered him $10,000 to assist him in the transportation of the cocaine. He stated that the cocaine was to be delivered to a male named "Zee" in Jessup, Maryland and that, upon delivery, he was to be given approximately $200,000 in payment. The money was to be returned to Edinburg, Texas to the supplier, and Garza was to be paid $21,000.

During his interview, Jimenez advised agents that he had received a call from Garza on February 25, 2003, regarding a load of cocaine that needed to be delivered to the east coast of the

---

[2] These facts are taken from Garza's Presentence Investigation Report ("PSR") at ¶¶ 3-5.

United States. Jimenez stated that he told Garza that he had a legitimate load that needed to be delivered to Violin, New Jersey. Jimenez stated that on February 26, 2003, he and Garza picked up Garza's trailer, which had been loaded with produce by J&D Produce. Jimenez was to assist as a second driver and was to be paid half the monies for delivery of the produce and $4,000 to $6,000 for assisting in the delivery of the cocaine. Jimenez knew that Garza was to deliver the cocaine to Jessup, Maryland. Jimenez further stated that the small package of cocaine confiscated from his jacket pocket was given to him by Garza when the agents directed them to park in the secondary inspection area. Jimenez also told agents that there was one more bundle of cocaine hidden in the cab that the Border Patrol agents missed during the initial seizure.[3]

**B.     Criminal Proceedings**

On March 20, 2003, Garza was charged in a two-count indictment with: (1) conspiracy to possess with intent to distribute approximately 11 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); and (2) possession with intent to distribute approximately 11 kilograms of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) (Count Two). (D.E. 1.) On April 8, 2003, Garza pleaded guilty to Count One pursuant to a written plea agreement with the United States. (D.E. 8, 9.)  In exchange for his guilty plea to Count One, the government agreed to move for the dismissal of Count Two, to recommend at sentencing that Garza receive full credit for acceptance of responsibility, and to recommend a sentence at the low end of the applicable guideline range. (D.E. 9.)

Pursuant to the Court's instructions (D.E. 10), the probation department prepared a Presentence Investigation Report ("PSR"). (D.E. 16.) The PSR calculated Garza's base offense

---

[3] The additional amount was included in the 11.07 kilograms referenced above.

level to be 32, based on the 11 kilograms of cocaine. (PSR at ¶ 10.) The PSR increased his offense level by 2 pursuant to U.S.S.G. § 3B1.1(c), finding that he was an organizer, leader, manager, or supervisor in the criminal activity, and then gave a three-level adjustment for acceptance of responsibility. (PSR at ¶¶ 10-17.)

The PSR further determined, however, that Garza was a career offender based on two of his prior convictions, a Florida state conviction for conspiracy to traffic marijuana, and a federal conviction for conspiracy to distribute and to possess with intent to distribute marijuana. (PSR at ¶ 18.) Thus, the PSR determined that his offense level should be 37 instead of 32, pursuant to U.S.S.G. § 4B1.1. (PSR at ¶ 18.) With the three-level adjustment for acceptance of responsibility, his total offense level was 34. (PSR at ¶¶ 18-20.) Garza's criminal history resulted in 8 criminal history points, which would establish a criminal history category of IV. (PSR at ¶¶ 25-27.) Because of his status as a career offender, however, Garza's criminal history category was determined to be a VI pursuant to U.S.S.G. § 4B1.1. (PSR at ¶ 27.) The resulting guideline range was 262 to 327 months. (PSR at ¶ 46.)

Garza, through counsel, objected to several of the statements made by Jimenez to DEA agents, on the grounds that they were not true. (PSR at 13.) He also objected to the two-level increase for a leadership role in the offense and to the career offender enhancement. (PSR at 13-14; D.E. 15.) As to the finding that he was a career offender, he argued that a Florida state conviction for "trafficking in marijuana" could not be a predicate offense for the enhancement for two reasons. First, the Florida statute under which Garza was convicted defined trafficking as including simple possession. Thus, it was unclear whether Garza had been convicted of a controlled substance offense for purposes of the career enhancement guidelines, because a simple possession offense would not qualify. (D.E. 1-3.) Second, he challenged the Florida conviction on the grounds that the

4

Florida conviction was obtained in violation of his Sixth Amendment right to counsel. (D.E. 15 at 4-6.) Specifically, although counsel was present during his rearraignment, Garza was sentenced at a separate hearing during which he was not represented by counsel. (D.E. 15 at 4.)

When the case was initially called for sentencing on June 20, 2003, the Court overruled Garza's objections to the role enhancement. (D.E. 51, Sentencing Transcript ("S. Tr.") at 17; D.E. 19.) The Court continued the sentencing to allow the United States additional time to research Garza's challenge to the career offender determination. The case was called a second time for sentencing on July 28, 2003. (D.E. 27; S. Tr. at 17-18.) At that time, the Court sustained Garza's objection to use of the Florida conviction and held that he should not be treated as a career offender. (D.E. 27; S. Tr. at 17-18.) The Court also granted the Federal Public Defender's motion for leave to withdraw at that time, due to a conflict of interest, and appointed Hector Del Toro to represent Garza. (D.E. 27; S. Tr. at 17-18.)

After the Court's rulings on those objections, the Probation Department prepared a Third Addendum to the PSR. This addendum included a two-level adjustment to the offense level for obstruction of justice, alleging that Garza had conspired with other inmates to provide false information to the government in efforts to receive a reduction for substantial assistance. (PSR, Third Addendum at ¶ 7.) It also denied him an adjustment for acceptance of responsibility, based on the same conduct. (PSR, Third Addendum at ¶ 8.) Taking into account the Court's prior rulings regarding Garza's objections, the revised PSR found a base offense level of 32, a 2-level adjustment for Garza's role in the offense, a 2-level adjustment for obstruction, and no other adjustments, resulting in a total offense level of 36. ((PSR, Third Addendum.) His criminal history category was a III, resulting in a guideline range of 235 to 293 months. ((PSR, Third Addendum at ¶ 46.)

At the final call for sentencing, on October 9, 2003, the Court heard testimony from several

inmates and a government agent regarding Garza's scheme to provide false information and to have others corroborate false information in order to obtain a downward departure. The Court also heard testimony from Garza and two witnesses he called. The Court concluded that Garza was not being truthful and that he had tried to have other inmates lie in order to obtain a reduction in his own sentence. (S. Tr. at 99-101.) The Court thus agreed with the Probation Department that Garza should receive an enhancement for obstruction of justice and that he was not entitled to acceptance of responsibility. (Id.) The Court in fact indicated that it might upwardly depart, because Garza's conduct fell outside the heartland of cases that would be obstruction. (S. Tr. at 103-04.) Ultimately, however, the Court sentenced Garza to the high end of the guideline range, 293 months, to be followed by a five-year term of supervised release.[4] (S. Tr. at 115-116; D.E. 46.) The Court also imposed a $200 fine and a $100 special assessment. (D.E. 46.) Judgment was entered against Garza on October 20, 2003. (D.E. 46.)

Garza timely appealed, but the Fifth Circuit affirmed his conviction and sentence in a per curiam opinion issued April 25, 2006. (D.E. 59.) Garza then filed a petition for writ of certiorari, which the Supreme Court denied on October 30, 2006. (D.E. 63.) Garza's § 2255 motion was received by the Clerk on August 22, 2007. (D.E. 64.) It is timely.

### III. MOVANT'S ALLEGATIONS

Garza lists four grounds for relief in his initial motion. First, he claims that he was denied ineffective assistance of counsel at sentencing, because his counsel failed to establish that he should not have been given the role adjustment and the increase for obstruction of justice. He claims that his counsel "simply objected" to the extra points and counsel failed to pursue Garza's challenges

---

[4] The Court also revoked Garza's supervised release in a prior federal case and imposed a sentence in that case to be served consecutively to the sentence in the instant case. (S. Tr. at 116, 118.)

6

to the PSR. (D.E. 64 at 5.) In his supporting memorandum, he explains that he wanted his counsel to file challenges to the obstruction of justice enhancement and role adjustment based on <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2005). (D.E. 65 at 6-7.)

Second, he claims that his counsel was ineffective on appeal because he "allowed" the grounds raised on appeal to be addressed under the "plain error doctrine." In support of this claim, he argues that his counsel initially filed an <u>Anders</u> brief, but that, after <u>United States v. Booker</u>, 543 U.S. 220 (2005) was decided, counsel "retracted" his opinion and filed an appeal. Garza appears to be arguing that counsel's failure to file a merits brief initially deprived him of a de novo review of this Court's judgment. (D.E. 64 at 6; D.E. 65 at 8-12; D.E. 75 at 6-8.)

In his third ground for relief, Garza claims that his counsel made a different argument on appeal than he wanted his counsel to make. He claims that his counsel erroneously argued that the advisory guidelines regime should be applied, but that Garza wanted him to argue that the facts that increased his sentence needed to be charged in the indictment or admitted by him, but instead they were found by the Court. (D.E. 64 at 7-8; D.E. 65 at 8-12.)

Fourth, he argues that both his initial appointed counsel, Assistant Federal Public Defender Christopher Jenkins, and his sentencing and appellate counsel, Hector Del Toro, failed to notify him that his personal possessions were seized and not forfeited. He claims that his attorneys' error "deprived [him] of the opportunity to request or submit some form to the Court to request for [his] personal property" seized during his arrest. (D.E. 64 at 9; <u>see also</u> D.E. 65 at 12-13.)

He asks that the Court vacate his sentence and resentence him without the increases for his role in the offense and obstruction, and giving him full credit for acceptance of responsibility. (D.E. 64 at 13.)

Construing his amended motion liberally, Garza argues that this Court erred in making the

7

enhancements for his role in the offense and for obstruction, claims which are not cognizable here.[5] (See D.E. 75 at 11-20.) Other than those claims, it does not appear to raise any new grounds for relief. Rather, it provides additional arguments and details in support of his original claims. In particular, he relies heavily on a Sixth Circuit decision, United States v. Nichols, 501 F.3d 542 (6th Cir. 2007)[6] for the proposition that counsel was ineffective for failing to make an argument based on Apprendi at the time of sentencing, and essentially for failing to anticipate Blakely v. Washington, 542 U.S. 296 (2004) and Booker, 543 U.S. 220. (D.E. 75 at 3-5.)

As discussed in detail herein, Garza is not entitled to relief on any of his claims.

## IV. DISCUSSION

**A.      28 U.S.C. § 2255**

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; United States v. Placente, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992). "[A] collateral challenge may not do service for an appeal." United States v. Frady, 456 U.S. 152, 165 (1982).

---

[5] See infra at Section IV.B.1.

[6] Subsequent to the parties' filings in this case, the Sixth Circuit granted a rehearing en banc in the Nichols case and vacated the opinion cited by Garza. See United States v. Nichols, No. 05-6482 (6th Cir. Jan. 3, 2008) (order granting rehearing en banc and vacating panel decision).

**B.     Ineffective Assistance of Counsel**

Garza's claims are all claims of ineffective assistance of counsel. Such claims are properly analyzed under the two-prong analysis set forth in Strickland v. Washington, 466 U.S. 668 (1984). United States v. Willis, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. Id. This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. United States v. Dovalina, 262 F.3d 472, 474-75 (5th Cir. 2001).

If the movant fails to prove one prong, it is not necessary to analyze the other. Armstead v. Scott, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

**1.     Counsel's Alleged Deficiencies At Sentencing**

Garza's first claim is that his counsel was constitutionally ineffective for failing to successfully pursue objections to the obstruction enhancement and role enhancement at sentencing. In order for Garza to show that he suffered prejudice as a result of counsel's ineffectiveness at sentencing, he must show that there is a reasonable probability that, but for counsel's alleged errors, the sentencing would have been different. See United States v. Phillips, 210 F.3d 345, 350 (5th Cir. 2000). This requires him to show a reasonable probability that he would have received a lesser sentence. United States v. Grammas, 376 F.3d 433, 438-39 (5th Cir. 2004). As discussed herein, there is no evidence to support any contention that, but for his counsel's alleged errors, Garza would

have received a lesser sentence.

The record clearly shows that counsel in fact objected to both the role adjustment and the enhancement for obstruction of justice, but that the Court overruled those objections. Garza argues, however, that counsel should have objected to these enhancements on the basis of Apprendi. (D.E. 65 at 6-7; D.E. 77 at 10-14.) Essentially, he argues that counsel should have argued that the adjustments to his offense level violated Apprendi, and argued for the extension of Apprendi that was embraced in the holdings of Booker and its predecessor, Blakely. Notably, at the time of Garza's sentencing, neither Booker nor Blakely had yet been decided. Nonetheless, Garza cites United States v. Nichols, 501 F.3d 542 (6th Cir. 2007) for the proposition that counsel should have anticipated these decisions. Garza's reliance on Nichols is misplaced for a number of reasons. Chief among them is that the opinion he relies upon has since been vacated and an en banc rehearing has been granted. See generally docket in United States v. Nichols, No. 05-6482 (Jan. 3, 2008 6th Cir.) (order vacating panel opinion and granting en banc rehearing).

Even if it were still a valid opinion, moreover, the Court is not bound by that case. Instead, the Court finds that Garza's attorney was not deficient for failing to predict the Blakely and Booker decisions and raise an argument based on them. See, e.g., Fuller v. United States, 398 F.3d 644, 650 n.4 (7th Cir. 2005) (an argument that counsel was ineffective for failing to anticipate Blakely and Booker would not be "tenable"); Dubose v. United States, 2007 WL 57090, *2 (11th Cir. Jan. 9, 2007) (unpublished) (rejecting ineffective assistance claim premised on counsel's pre-Booker failure to make an Apprendi-type challenge to the federal sentencing guidelines and noting that, to be effective under Strickland, "an attorney need not anticipate changes in the law.") (citation omitted); United States v. Fields, 162 Fed. Appx. 799, 801 (10th Cir. Jan. 5, 2006) (unpublished) (counsel's failure to predict holdings in Booker was not objectively unreasonable); United States

10

v. Campbell, 2004 WL 1888604 (1st Cir. Aug. 24, 2004) (unpublished) (failure to anticipate Blakely would not constitute unreasonable performance under Strickland, particularly in light of well-established law in circuit that was to the contrary); see also United States v. Williams, 374 F. Supp. 2d 173, 176-77 (D.D.C. 2005) (collecting authority holding failure to predict holdings of Blakely and Booker did not constitute deficient performance by counsel).

Garza's claim is infirm, as well, because he cannot show prejudice. Clearly established Fifth Circuit law at the time of his sentencing showed that Garza was not entitled to relief under Apprendi. Thus, even if his counsel had argued that the increase for a leadership role or for obstruction violated Apprendi, he cannot show that the outcome of sentencing would have been different. Specifically, at the time of Garza's conviction and sentencing (prior to Blakely), the Fifth Circuit's understanding of the "statutory maximum" under Apprendi was clearly the ***statutory maximum under the United States Code*** for the offense, not the maximum set forth in the applicable guideline range. United States v. Pineiro, 377 F.3d 464, 467 (5th Cir. 2004) (prior to Blakely, it was "long-entrenched circuit precedent" that Apprendi is inapplicable where post-verdict judicial findings of fact increased a defendant's sentence substantially, so long as the resulting sentence does not exceed the statutory maximum set forth in the United States Code). See also United States v. Cooper, 274 F.3d 320, 243 (5th Cir. 2001) ("Error under Apprendi requires reversal only if a defendant's sentence exceeds the statutory maximum."). Under ***that*** understanding, an Apprendi violation occurs only where a defendant was sentenced to greater than the statutory maximum based on facts not alleged in the indictment nor pleaded to.

In this case, the statutory maximum for Garza's conviction was life imprisonment. See 21 U.S.C. § 841(b)(1)(A). Garza was sentenced to 293 months, less than the statutory maximum. Because he was not sentenced above the statutory maximum as the Fifth Circuit and this Court

11

would have interpreted it at the time of his sentencing, the Fifth Circuit's clearly established law at the time of his conviction and appeal dictated that the principles of Apprendi were not violated by this Court's sentencing of Garza. Thus, the arguments were meritless at the time and this Court would not have agreed with those arguments even if his counsel had raised them. See United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue."). Accordingly, Garza's ineffective assistance claim fails.[7]

Additionally, as previously noted (see supra at p. 8), Garza devotes a portion of his amended petition to arguing that he should not have received the enhancements. To the extent that he is challenging the Court's application of the guidelines, that claim is not cognizable here, as Garza concedes. United States v. Williamson, 183 F.3d 458, 462 (5th Cir. 1999); see also D.E. 77 at 10.

### 2. Counsel's Alleged Deficiency in Allowing "Plain Error Review" on Appeal

In Garza's second argument, he claims that his appellate counsel was ineffective because he argued for and "allowed" the Fifth Circuit to apply the plain error standard to his Booker claim. As correctly noted by the government, it is the appellate court that determines the standard of review it will employ when addressing any argument before it, not counsel. (See D.E. 72 at 9-10 (citing authority.) Moreover, the proper standard of review where a Booker objection was not raised at sentencing was plain error review. United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005). Thus, Garza has not shown that, even if appellate counsel advanced the plain error standard, it was

---

[7] The Court further notes that it contemplated upwardly departing in this case, and ultimately imposed a sentence at the highest end of the guideline range. Thus, even if Garza were sentenced after Booker, or the Court had applied Booker-like principles at his sentencing, there is nothing in the record to support the contention that he would have received a lesser sentence. (See D.E. 59 at 2.) (Fifth Circuit's opinion in this case noting same).

deficient of him to do so, nor has he shown that the Fifth Circuit erred in applying it.

Finally, to the extent that Garza's claim can be construed as one that his counsel was ineffective for failing to raise a Booker objection at sentencing (which would have resulted in a more stringent standard of review on appeal), that claim fails for the reasons set forth in the preceding section. In short, counsel was not deficient for failing to raise an Apprendi-based objection at sentencing.

For all of these reasons, Garza's second claim fails.

### 3. Counsel's Alleged Failure to Raise a Booker Claim at Sentencing and on Appeal

Garza's third claim is that his counsel was ineffective for failing to raise a claim based on Booker. For the reasons set forth in section IV.B.1 supra, this claim does not entitle Garza to relief.

### 4. Counsel's Alleged Failure to Advise Garza Regarding His Property

In his fourth and final claim, Garza claims that the government seized property at the time of his arrest, but that the government did not properly seek forfeiture and has not returned the property. He contends that both his trial counsel and his counsel at sentencing were ineffective for failing to advise him of the non-forfeiture of his property.

As an initial matter, Garza has not shown that this claim is properly before the Court as part of his § 2255 motion. He has not cited any authority for the proposition that such a claim can be brought in a § 2255 motion, and the general standards governing § 2255 claims would appear to preclude such a claim. See United States v. Vaughn, 955 F.2d at 368 (§ 2255 is reserved for claims of constitutional magnitude).

Moreover, there is a specific avenue available for seeking the return of property, in the form of a motion for return of property pursuant to Fed. R. Crim. P. 41(g), which, after the conclusion of a criminal case, is converted into a civil action for return of property. See Taylor v. United States,

483 F.3d 385, 387 (5th Cir. 2007). Garza has not yet filed a motion nor sought the return of any property allegedly taken improperly. Accordingly, he has not shown that he is missing any property or that any was improperly taken or not returned. Thus, he cannot establish prejudice from his counsel's alleged failure to seek a return of such property. This claim fails.

## C. **Certificate of Appealability**

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Garza has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a COA. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon Slack, 529 U.S. at 483-84).

The Court concludes that reasonable jurists could not debate the denial of Garza's § 2255 motion on substantive grounds nor find that the issues presented are adequate to deserve encouragement to proceed.  537 U.S. at 327 (citing Slack, 529 U.S. at 484).  Garza is not entitled to a COA as to his claims.

## V.  CONCLUSION

For the aforementioned reasons, Garza's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 64) is DENIED.  Additionally, Garza is DENIED a Certificate of Appealability.

It is so ORDERED this 19th day of February, 2008.

_____
Janis Graham Jack
United States District Judge